UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CLAUDE FORTUNE,

       Petitioner,

v.                              Case No:  2:15-cv-434-FtM-38CM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.

_____/

## OPINION AND ORDER[1]

    This matter comes before the Court on Petitioner Claude Fortune's Petition for Writ of Habeas Corpus filed under 28 U.S.C. 2254 (Doc. 1) filed on July 20, 2015.  Respondent Secretary of the Department of Corrections (DOC) filed a Response in Opposition (Doc. 8) on January 28, 2016.  Respondent filed a copy of the Record by Paper Submission (Doc. 9) on January 28, 2016.  Fortune filed his Reply Brief to the Response (Doc. 13) on May 5, 2016.  The Petition is ripe for the Court's review.

## BACKGROUND

    On July 19, 2011, Fortune was arrested for sexual battery on T.C. a minor female who was five years old at the time of the sexual battery in violation of Fla. Stat. §

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

794.011(2).  On March 14, 2012, Fortune went to trial in the Circuit Court for the Twentieth Judicial Circuit in and for Lee County, Florida.  On March 15, 2012, Fortune was convicted by a jury on three counts of sexual battery on a child less that twelve years of age, one count of lewd and lascivious molestation, and one count of lewd and lascivious conduct. (Ex. 5 at 1).  Fortune was adjudicated guilty in accordance with the verdict and sentenced to life in prison. (Ex. 10, 11).  The Second District Court of Appeals affirmed *per curiam*. (Ex. 15); *Fortune v. State*, 111 So. 3d 888 (Fla. 2d DCA 2013) (table).  Fortune did not petition the United States Supreme Court for certiorari review.

On February 11, 2014, Fortune filed a motion for post- conviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure. (Ex. 16).  Fortune filed his Amended Rule 3.850 Motion on March 12, 2014. (Ex. 18).  The Circuit Court denied Fortune's Amended Rule 3.850 Motion on June 23, 2014. (Ex. 22).  The Appellate Court affirmed *per curiam*. (Ex. 24); *Fortune v. State*, 173 So. 3d (Fla. 2d DCA 2015) (table). Mandate issued June 8, 2015. (Ex. 25).  Fortune subsequently filed the instant Petition. The Respondent agrees that Fortune's Petition is timely filed.

## STANDARDS OF REVIEW

### *Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (a)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (b)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White,* 134 S. Ct. at 1702*; Carey v. Musladin, 549* U.S. 70, 74 (2006) *(citing Williams v. Taylor,* 529 U.S. 362, 412 (2000)). The Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme

Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

## Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That

is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The foregoing analysis also applies to claims of ineffective assistance of appellate counsel. "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal.*" Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)).

### Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (*citing Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present

his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the

underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

## **DISCUSSION**

In his Petition for habeas relief, Fortune raises five grounds. Specifically, he asserts that he was:

(1) denied due process of law under the Fifth Amendment to the United States Constitution where the testimony of T.C. concerning prior acts of sexual molestation was inadmissible "Williams Rule" evidence.

(2) denied the effective assistance of trial counsel guaranteed him by the Sixth and Fourteenth Amendments of the United States Constitution when counsel failed to conduct a reasonable pre-trial investigation and consult with a medical expert to establish that the victims account of sexual abuse was medically impossible.

(3) denied the effective assistance of counsel guaranteed him by Amendments Six and Fourteen of the United States Constitution when counsel failed to adequately cross examine, challenge and rebut the States expert testimony regarding sexual abuse.

(4) denied effective assistance of Counsel guaranteed him by Amendments Six and Fourteen of the United States Constitution when trial counsel failed to object or move for a mistrial when the prosecutor made improper comments during closing argument on issues outside the evidence.

(5) denied the effective assistance of Counsel guaranteed him by Amendments Six and Fourteen of the United States Constitution due to trial counsels failure to request a jury verdict form containing specific choices for the jury to determine which alleged method of sexual battery Fortune allegedly committed.

The Court will address each ground below.

### *Ground One*

Fortune avers that he was denied due process of law under the Fifth Amendment to the United States Constitution because T.C.'s testimony about prior acts of sexual

molestation was allowed at trial. Respondent argues that Ground One was not exhausted in the State system as a federal constitutional claim and is therefore procedurally barred. Respondent argues that although Fortune's Trial Counsel argued against the admission of T.C.'s testimony at trial and that his Appellate Counsel argued on direct appeal that the admission of T.C.'s testimony showing prior acts of sexual molestation was improper (Ex. 12 and Ex. 14), neither argued that such testimony violated Fortune's Fifth Amendment due process rights. Instead, both Trial and Appellate Counsel argued the issue in state law terms and Appellate Counsel cited only state cases in the initial and reply briefs on direct appeal. Respondent continued that the arguments at trial and on direct appeal in no way alerted the state courts that Fortune was claiming a federal constitutional violation, and therefore, the claim is unexhausted. Fortune replies that while his Appellate Counsel only argued from Florida State cases, some of those cases contained federal arguments and so his claims should be considered exhausted.

Respondent's argument is well taken. In his brief on direct appeal, Fortune never mentioned the federal constitution, nor did he cite to any federal case law. In Summary, his argument stated:

> Prior to the trial, the State filed a timely Williams Rule Motion under § 900.404(2), Fla. Stat. seeking to admit in evidence at trial the testimony of T.C. concerning alleged prior similar acts of child molestation. In a pre-trial ruling, the court held that the testimony would be admitted at trial. (Supplement, pp. 305-307). In *McLean v. State*, 934 So. 2d 1248, (Fla. 2006), the Florida Supreme Court established strict requirements which must be adhered to before the jury is permitted to consider such evidence.
>
> In ruling that the Williams Rule evidence proffered by the State would be admissible at trial, the court below committed reversible error under McLean because (1) the commission of the prior acts was not proved by "clear and convincing evidence; (2) the prior act evidence was not relevant to any

> issue in the case and amounted to nothing more than classic "propensity" evidence; and (3) the prosecutor's repeated reference to the prior acts in the closing argument made those acts a "feature" of the case.

(Ex. 12 at 7). Nowhere in the brief did Fortune argue that the State Court's determination that Williams Rule materials could be used during the trial violated Fortune's federal constitutional rights. Fortune did not cite to federal case law, nor use the terms federal law, Untied States Constitution, nor due process; instead, Fortune argued that the Williams Rule evidence failed to meet the admissibility requirements of *McLean* v. State, 934 So. 2d 1248 (Fla. 2006), a Florida Supreme Court case.

As noted above, exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (*citing Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). Further, any attempt to file a second appeal to raise this claim would be procedurally barred in the State Court as untimely. Since Fortune did not raise this claim as a federal claim on direct appeal in the State Court, and the claim would now be procedurally barred in the State Court, the claim is unexhausted and procedurally barred from federal habeas review.

### *Ground Two*

Fortune avers that he received ineffective assistance of Trial Counsel because Trial Counsel failed to conduct a reasonable pre-trial investigation and call a medical expert to testify that the victim's account of sexual abuse was medically and scientifically impossible without signs of abuse. Fortune claims that Trial Counsel should have called Edward N. Wiley, M.D., a forensic medical specialist. Dr. Wiley reviewed the evidence in

the case and concluded that it was medically impossible for Fortune to have committed a vaginal or anal penetration on T.C. Fortune says that he was prejudiced by Trial Counsel's failure to call Dr. Wiley to testify.

Under *Strickland* "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir. 1995). "This is especially true because allegations of what a witness would have testified to are largely speculative. Speculation about what witnesses could have said is not enough to establish the prejudice-prong of *Strickland." Crisp v. United States*, No. 2:07-CR-95-FTM-34SPC, 2014 WL 1285894, at *12 (M.D. Fla. Mar. 31, 2014) (citing *Jones v. McNeil,* No. 07–22367–CIV, 2009 WL 1758740, at *6 (S.D. Fla. June 22, 2009)); *see also Brown v. McNeil,* 2010 WL 6405670, *10 (S.D. Fla. 2010). A Fortune cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." *Van Poyck v. Fla. Dep't of Corr.,* 290 F.3d 1318, 1324 (11th Cir.2002).

Fortune presented this argument before the Circuit Court in his Rule 3.850 motion. The State Circuit Court denied Fortune's Rule 3.850 motion noting that Fortune could not show prejudice because the charges against him could have been proven by either penetration or union. (Ex. 22, at 3-5). The Circuit Court found:

> However, the Court finds that Defendant cannot show prejudice. The charges could have been proven with evidence of either penetration or union. Thus, even with the proposed expert testimony that penetration was impossible without further physical evidence, the evidence at trial still supports Defendant's convictions based on "union." The State presented the child victim's testimony detailing the sexual abuse inflicted on her by Defendant. While the five year old victim described Defendant's penis going "in" her mouth, "jina" and "butt," she clearly described some kind of contact

between Defendant's penis and her mouth, vagina and anus. She testified that her family members made her brush her teeth and take a bath before taking her to the police, which explains the lack of physical evidence at the time of her physical examination. The State also presented testimony from the victim's family members, describing 1) extremely suspicious prior incidents between the child victim and Defendant that resulted in the victim's mother forbidding Defendant from coming to their home, and 2) the incident which lead Defendant's arrest, in which the victim's brother saw the immediate aftermath of an episode of abuse: his five year old sister laying naked from the waist down with her legs in the air. Finally, while Ms. Printz could not confirm whether abuse occurred, she testified that the child victim's dilated vagina and minimal hymen tissue were not characteristics she had ever seen before in a five year old and that it made her "raise her eyebrow." Attached to this order is a copy of the testimony of the victim, victim's mother, victim's brother and Ms. Printz.

Sexual battery by union was included in the jury instructions and argued to the jury in closing argument. While Defendant seems to believe that physical evidence was necessary in order for him to be convicted of the crimes charged, this is not the case. The evidence adduced at trial provided ample basis for the jury to convict Defendant of sexual battery based on union. Because of this, potential expert testimony that penetration was medically impossible without injury to the victim is not enough to undermine the Court's confidence in the outcome of the trial. Because Defendant cannot show prejudice such that a "reasonable probability exists that, but for counsel's error, the result in the case would have been different," *Strickland*, 466 U.S. at 694, ground one is legally insufficient and is **denied.**

([Doc. 22 at 4-5](#)) (emphasis in original).

The Court finds the Circuit Court's reasoning is supported by the evidence in the record. Petitioner cannot establish that he was prejudiced because Florida's sexual battery statute allows for sexual battery by union. The statute reads that "[s]exual battery" means oral, anal, or vaginal penetration by, or union with, the sexual organ of another or

the anal or vaginal penetration of another by any other object; however, sexual battery does not include an act done for a bona fide medical purpose. Fla. Stat. § 794.011(1)(h).

The Information charging Fortune with sexual battery reads that Fortune "on one or more occasions, Between July 20, 2009 and July 18, 2011, in Lee County, Florida being eighteen years or older, did unlawfully commit a sexual battery upon T.C. a child less than 12 years of age, by causing his penis to penetrate or have union with the vagina of T.C. contrary to Florida Statute 794.011(2)." (Ex. 1 at 2). The Information continued "on one or more occasions, Between July 20, 2009 and July 18, 2011, in Lee County, Florida being eighteen years or older, did unlawfully commit a sexual battery upon T.C. a child less than 12 years of age, by causing his penis to penetrate or have union with the anus of T.C. contrary to Florida Statute 794.011(2)." (Ex. 1 at 2). Additionally, sexual battery by union was included in the jury instructions and argued to the jury in closing argument.

Even if Dr. Wiley had testified that neither T.C.'s vagina nor anus had been penetrated, Fortune could still reasonably be found guilty of sexual battery under Florida law because evidence was presented that he had contact with T.C. even if only by union. As the Circuit Judge noted in his Order, T.C. clearly described some kind of contact between Defendant's penis and her mouth, vagina and anus. (Ex. 22 at 5). Therefore, Fortune cannot show that a "reasonable probability exists that, but for counsel's error, the result in the case would have been different," because Dr. Wiley's testimony only dealt with medical evidence pertaining to penetration.

<u>*Ground Three*</u>

Fortune avers that Trial Counsel was ineffective for failing to adequately cross-examine the State's expert, Kimberly Printz, regarding sexual abuse. Kimberly Printz was the nurse practitioner who examined T.C. after the sexual battery on the afternoon of July 19, 2011. Fortune claims he was prejudiced by Trial Counsel's failure to cross examine, challenge, or rebut Printz's testimony.

Printz testified on direct exam that T.C.'s hymen was minimal but she could not determine whether the lack of hymen membrane was caused by penetration or was normal for T.C. (Ex. 5 Vol. II at 377). Printz testified on cross examination as follows:

Q.      "Now you met with Teresa Claude on July 19, 2011?"

A.      "Yes ma'am."

Q.      "Do you remember approximately what time?"

A.      "I want to say it was between like 3:00 PM and 6:00 PM. It was in the afternoon I know."

Q.      "And did you see any bruises?"

A.      "No, Ma'am."

Q.      "You did not see any abrasions?"

A.      "No. Ma'am."

Q.      "and you obtained swabs from the examination?"

A.      "Yes, Ma'am."

Q.      "And that purpose is for DNA?"

A.      "Yes, Ma'am."

Q.      "And you swabbed the mons pubis?"

A.      "Yes."

Q.      "Did you swab the anal area as well?"

A.      "I don't have it put in here that I did."

Q.      "And you swabbed the labia majora?"

A.      "Yes, Ma'am."

Q.      "And you said previously that vagina, you took one from the vagina?"

A       "Yes, Ma'am."

Q.      "And you packaged those swabs?"

A.      "Yes Ma'am."

Q.      "Who do you send them to?'

A.      "We give them to law enforcement and they do whatever they need to do with them."

Q.      "Now, did you also examine her anal region?"

A.      "Uh, yes, Ma'am."

Q.      "Okay. And you noted no bruises?"

A.      "That's correct."

Q.      "No abrasions?"

A.      "Correct."

Q.      "No scars?"

A.      "Uh-huh."

Q.      "No Lesions?"

A.      "Uh-huh.  Yes, Ma'am."

Q.      "Had you ever examined [T.C.] before?"

A.      "No Ma'am."

Q.      "So you would not know hymen would be normally, what her hymen would be?"

A.      "That's correct.  I would not know what her base line is. Normal is kind of hard work to beat around."

(Ex. 5 Vol. II at 379-381).

In denying the claim on Fortune's Rule 3.850 Motion, the Circuit Court found:

> 16.  Moreover, contrary to Defendant's argument, Ms. Printz's testimony was highly beneficial for Defendant. Rather than bolster or "reconcile" the victim's testimony, she testified that there was no clear evidence that any abuse happened. Through her testimony, the jury received evidence supporting the possibility that the victim's condition at the time of the forensic interview was "her normal." Defense counsel put heavy emphasis on the lack of physical injury to the child victim in her cross-examination and Ms. Printz's confessed inability to discern whether any abuse occurred.
>
> 17. Counsel could not have been ineffective for failing to challenge the witness' expertise and training. Suggesting that Ms. Printz did not have the proper education to evaluate the victim would have only served to discredit her testimony, which was beneficial to Defendant. As the State wrote succinctly in its response, "it is unclear how counsel could ever be deemed ineffective for capitalizing on a lack of evidence presented by the State."

(Ex. 22 at 7-8).

Trial Counsel's cross examination of Printz brought out information there was no scaring, tearing, lesions, or bruising to T.C.'s vagina.  The Circuit Court found the cross examination was highly beneficial to Fortune, because Printz testified there was no clear evidence that T.C. had ever been abused.   The Circuit Court's decision was well supported by evidence in the record.   As such, Fortune has failed to establish the deficiency prong of *Strickland* because it can be objectively concluded that at least one reasonably competent attorney could have determined the cross-examination by Trial Counsel during trial was more than adequate.

### Ground Four

Fortune avers that Trial Counsel was ineffective for failing to object or move for a mistrial when the prosecutor made improper comments during closing argument on

issues outside of the evidence presented at trial.  Fortune says that by raising the fact that he could be convicted of sexual battery without actual penetration improperly shifted the burden onto him as the defendant   This claim was raised as Fortune's fifth ground in his Rule 3.850 Motion.  The Circuit Court denied the ground finding:

> Defendant's fifth ground alleges ineffective assistance of counsel for failing to move for a mistrial or object to comments made by the prosecutor during closing argument. The allegedly improper comments were the State's argument to the jury that the abuse happened by union instead of penetration, thereby explaining the lack of physical evidence. Defendant argues that this shifted the burden of proof to the defense, argued facts not in evidence, and contributed to his conviction. Attached to this order is a copy of the trial transcript containing the closing arguments of the parties and the jury instructions.
>
> It is clear after a review of the trial transcript that there was nothing improper about the prosecutor's closing argument. Defendant was charged with sexual battery on a minor, which can be proven by either "union" or penetration. The Court explained to the jury when reading the jury instructions that "union" means contact. Therefore, the prosecution could prove the offenses by presenting evidence of contact between Defendant's penis and the child victim's body, and its comments in closing argument of how "union" was supported by the evidence were not improper. Because the statements were a fair comment on the evidence, they were permissible by law; therefore, any objection or request for a mistrial made by Defense counsel would not have been successful. A defense lawyer cannot be deemed ineffective for failing to make a meritless objection. *Raleigh v. State*, 932 So. 2d 1054, 1064 (Fla. 2006). Because ground five is conclusively refuted by the record and fails to allege facts that, if true, raise a legally sufficient claim for relief, it is **denied**.

(Resp. Ex. 22, pp. 10-11) (emphasis in original).  The Circuit Court's decision was supported by the evidence in the trial record.

Fortune was charged with sexual battery of a child under twelve years of age. "Sexual battery" means oral, anal, or vaginal penetration by, or union with, the sexual

organ of another or the anal or vaginal penetration of another by any other object; however, sexual battery does not include an act done for a bona fide medical purpose. Fla. Stat. § 794.011(1)(h).  The Prosecutor explained during opening that Fortune was charged with sexual battery on a child less than twelve years of age and that sexual battery on a child less than twelve years of age could occur by penetration or by union. (Ex. 5 Vol. I at 175).  The Prosecutor in his closing also told the jury that Fortune could be found guilty of sexual battery by union without actual penetration.  The Court explained to the jury that "union" means contact. (Ex. 5 Vol. III at 506).  Thus, the Prosecutor's statement in closing was a correct statement of the law and did not shift the burden to establish guilt beyond a reasonable doubt onto Fortune.  As such, there is no prejudice to Fortune under *Strickland*.

Given that the jury was informed in the opening and closing statements that union alone was sufficient to establish a sexual battery, the judge instructed the jury on the law, and the Prosecutor's properly cited the law, any objection by Trial Counsel during the Prosecution's closing that union alone constitutes sexual battery on a child less than 12 years of age would have been meritless.  As the Circuit Court correctly found, a defense lawyer cannot be deemed ineffective for failing to make a meritless objection. *Raleigh v. State*, 932 So. 2d 1054, 1064 (Fla. 2006).  Therefore, Fortune's claim in Ground Four is denied.

## Ground Five

In Ground Five, Fortune avers that Trial Counsel was ineffective for failing to request a jury verdict form containing specific choices for the jury to determine which alleged method of sexual battery he committed.  Respondent states that this argument is

procedurally barred because it was not raised in the State Court. Fortune agrees that this matter was not raised in the State Court but argues that he is entitled to review of this claim under *Martinez v Ryan*, 566 U.S. 1 (2012) because he did not have counsel in his state post-conviction proceedings.

*Martinez v. Ryan,* concerns the availability of the cause and prejudice exception when a petitioner presents a procedurally defaulted claim of ineffective assistance of trial counsel in a federal habeas petition. But *Martinez* recognizes a narrow, equitable exception to this rule:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 17. A "substantial" claim of ineffective assistance of counsel is one that has "some merit." *Khianthalat*, WL 1196716, at *21. *Martinez* provides that the exception is available when a criminal defendant is required to raise ineffective assistance of trial counsel claims in a collateral proceeding, rather than on direct appeal. *Id.* This exception has been extended to situations in which, even if a state's procedures technically permit a defendant to bring a claim of ineffective assistance of trial counsel on direct appeal, "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 599 U.S. 413, 428-29 (2013). So, the issue is whether Fortune can establish that his ineffective assistance of counsel claim is sufficiently substantial under *Martinez* to bring in his federal petition. *Khianthalat*, WL 1196716, at *21.

Fortune argues that Trial Counsel should have objected to the verdict form because the verdict form did not provide for specific findings of what method — penetration or union — of sexual battery the jurors believed Fortune was guilty of violating.

In this instance, Fortune has not shown how the verdict form was so defective that it did not allow the jury to address all the factual issues essential to their judgment. The Prosecutor explained that Fortune could be found guilty of sexual battery by union and the Circuit Judge read the law to the jurors explaining that Fortune could be found guilty of sexual battery by penetration or by union. The jury knew the precise nature of the sexual activity necessary to convict Fortune of sexual battery. Fortune fails to demonstrate that he would have had a reasonable probability of acquittal had the jury been given a verdict form with separate sections for sexual battery by union or penetration specified on the form. Therefore, his claim that Trial Counsel's failure to object to the verdict form was ineffective assistance of counsel fails to demonstrate the required prejudice under *Strickland*, and the claim is denied.

## CONCLUSION

Fortune's claim that he was denied his Fifth Amendment right as to T.C.'s testimony to prior acts of molestation is procedurally barred and denied as such. The remaining grounds alleging ineffective assistance of counsel fail to set forth the required prejudice under *Strickland* and they are due to be denied.

## CERTIFICATE OF APPEALIBILITY

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of

appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is now

**ORDERED:**

(1) The Attorney General is **DISMISSED** as a named Respondent.

(2) Petitioner Claude Fortune's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. 2254 (Doc. 1) is **DENIED**.

(3) Petitioner is **DENIED** a certificate of appealability.

(4) The Clerk of the Court is directed to terminate any pending motions, enter judgment, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 8th day of August 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:
All Parties of Record
SA: FTMP-2